**UNITED STATES OF AMERICA,**

           Plaintiff,

v.                                   **Case No. 04 CR 235**

**STEVEN J. PARR,**

           Defendant.

## MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS
## STATEMENTS AND PHYSICAL EVIDENCE

    The defendant has moved to suppress custodial statements and physical evidence obtained during the course of the investigation in this matter. He has also moved to suppress physical evidence obtained during a July 21, 2001 drug investigation, which resulted in unrelated criminal charges against the defendant. The defendant respectfully requests that the court conduct an evidentiary hearing to address these issues. It is anticipated that the motions in this matter will require a full day of testimony. Counsel for the parties met in person on February 23, 2005 and again by telephone on February 25, 2005, to discuss material disputed facts. Those facts and other legal issues which necessitate an evidentiary hearing will be described below.

### FACTS

    In August of 2004, agents of the FBI received a letter dated August 23, 2004 from John Schultz, a prisoner at the Oshkosh

-1-

Correctional Institution in Oshkosh, Wisconsin.  Schultz alleged that he was aware of an individual who was making plans to "blow up the Federal Building in Milwaukee."  In response to such letter, the FBI interviewed Schultz on August 25, 2004.  Schultz related that the defendant, Steven J. Parr, had, during private conversations, described a plan to blow up the Federal Building on Wisconsin Avenue in Milwaukee.  Various details regarding these conversations were provided at that time.  On September 20, 2004, at the direction of investigating agents, Schultz engaged the defendant in a conversation, which was secretly recorded.  During this conversation, Parr allegedly described his knowledge of bomb making, as well as his plans to create an explosive device to be detonated at or near the Federal Building.

On September 21, 2004, the defendant was released from the Oshkosh Correctional Institution to a halfway house, in accordance with his statutory state sentence structure.  Department of Corrections personnel took him from the Oshkosh facility to the halfway house on that date.

On September 20, 2004, the defendant, following the normal discharge procedure, stored his personal belongings with the property office of the Oshkosh Correctional Institution, in anticipation of his September 21, 2004 discharge.  All of his property was released to him on September 21, 2004, when he was taken to the halfway house.  On September 22, 2004, the defendant

was taken back into custody by the Rock County Sheriff's Department and returned to the Oshkosh Correctional Institution. Parr remained in maximum confinement in that facility, without any formal charges having been lodged, or the issuance of a lawful warrant or detainer. On September 29, 2004, agents of the F.B.I. interrogated the defendant at the correctional facility and obtained an inculpatory statement. He was then conveyed to the federal courthouse in Green Bay for his first appearance on the instant indictment. He was formally arrested on September 29, 2004, based upon the attached warrant (Exhibit 1), and criminal complaint (Exhibit 2).

After the defendant placed his personal property in the property room on September 20, 2004, and before it was returned to him on September 21, 2004, staff members of the Oshkosh Correctional Institution made duplicates of various documents which were part of the personal property. Those materials were copied at the direction of the FBI and turned over to that agency by Captain Rick Phillips. (See attached FBI 302 - Bates Stamped 0048-0051 and 0053-0072, Exhibit 3). Prior to their duplication, FBI agents read and searched through the personal belongings of the defendant.

As part of the followup investigation, after the formal arrest of the defendant, investigating agents conducted searches of various premises which resulted in the seizure of property belonging to the defendant, the government claims that the seizure

-3-

of such property was made as a result of lawful third party consent. The first seizure occurred on September 28, 2004, at 603 South Main, Janesville, Wisconsin, at the residence of Linda Williamson. At that time, Williamson surrendered six books, documents, and chemicals belonging to the defendant, which had been stored with her by him. The second seizure also occurred on September 28, 2004, at 1234 Marquette Street, Janesville, Wisconsin. On that occasion, law enforcement officials obtained materials belonging to the defendant, which had been entrusted by him to the defendant's brother. They were surrendered by the defendant's brother, David Parr, at the direction of the FBI. A third search occurred at 10112 Cornell, Viola, Wisconsin, on September 29, 2004. At that time, the defendant's father surrendered to agents of the FBI, personal items, including letters belonging to the defendant. and which had previously been stored by the defendant with his dad. These items were searched by agents. However, none were seized.

The government will also attempt to introduce at trial, materials obtained during a search warrant which was executed on July 21, 2001, at 1121 Milton Avenue, Janesville, Wisconsin. The warrant authorized the seizure of materials related to possession and/or delivery of marijuana.

## ISSUES

1.  Was there lawful third party consent for the search at 603 South Main, Janesville, Wisconsin; 1234 Marquette Street, Janesville, Wisconsin; 10112 Cornell, Viola, Wisconsin; and, the Oshkosh Correctional Institution?

2.  Was the defendant's custodial statement the by-product of an illegal arrest?

3.  Were the items seized by Oshkosh Correctional Institution officers fruits of an illegal arrest?

4.  Did the seizure of certain items on July 21, 2001, exceed the scope of the search authorized by the warrant?

## DISPUTED MATERIAL FACTS

1.  For each of the claimed third party consensual searches, the facts surrounding the actual and/or apparent authority of the consenting individual are in dispute. These facts include the actual expectation of privacy of the defendant in storing items with the respective consenting individual or entity, the nature of the inquiry that was made by law enforcement officials in the course of seizing the items, and the statements that were made by the purported consenting individuals during the search and surrender of the evidence.

2.  The circumstances surrounding the defendant's apprehension and reinstitutionalization on September 22, 2004, together with

the claimed basis for detaining him for eight days beyond his official release from prison.

3. The knowledge of the officers, their intent, and activities which relate to the application for the search warrant and to its execution on July 21, 2001. The search warrant clearly predated the events giving rise to the instant indictment. The government advises that they have not yet had the opportunity to review the circumstances of that search with local law enforcement officials. Therefore, there is not yet a basis to agree to the factual underpinnings of the search and accordingly, they are in dispute at this time.

**ARGUMENT**

**I.   THIRD PARTY CONSENTS.**

The legitimacy of the warrantless searches and seizures at 603 South Main and 1234 Marquette Street, Janesville, Wisconsin, are founded on claimed third party consent. The defendant maintains that neither of these purported voluntary consents were lawful. In both cases, the defendant will establish that the items seized had been stored with the individual who surrendered them to the FBI, in anticipation of commencing a sentence incarceration. The defendant had an expectation of privacy for his stored property. There was a mutual understanding that those items would be kept until they were retrieved by the defendant, upon release from his criminal justice sentence. Each individual served only as a conservator or

bailee of the property. They were individually responsible for maintaining its safety and insuring that it be returned only to the defendant.

There was no mutual use of the property. See United States v. Jenson, 169 F.3d 1044 (7th Cir. 1999). The custodians did not have the actual authority to consent to the search. Similarly, law enforcement officials did not engage in the proper inquiry to determine such authority. Any assumption by the FBI that the third parties had lawful authority was unreasonable. See Illinois v. Rodriguez, 497 U.S. 177 (1990). Under the totality of the circumstances, there was no apparent authority for the third parties' consent to search or the resulting seizure. See United States v. Melgar 227 F3d 1038 (7th Cir. 2000); see also United States v. Klotz, 943 F2d 707 (7th Cir. 1991). The mere possession of the property in this case did not create a reasonable belief by the officers that the consenting individuals had the apparent authority to consent. United States v. Basinski, 226 F3d 829 (7th Cir. 2000).

The search and seizure at the Institution was unlawful for two reasons: first, the warrantless search of the defendant's belongings was unreasonable under the circumstances because he had a protected expectation of privacy; and second, the defendant had an added expectation of privacy in the seized documents which related to his anger management group.

-7-

Case 1:04-cr-00235-WCG   Filed 03/01/05   Page 7 of 13   Document 52

At the hearing, the facts regarding the defendant's release from prison custody, as have been previously described, will be demonstrated. Once the court has determined the underlying facts, it must then decide what expectation of privacy was reasonably held by the defendant. The United States Supreme Court determined in <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984), that a prisoner had no reasonable expectation of privacy in his individual prison cell, which would entitle him to protection against Fourth Amendment unreasonable searches. <u>Hudson</u> at 525-26. However, the facts presented herein are inapposite to those in <u>Hudson</u>. Parr had placed his belongings in a storage room in anticipation of his release the next day. The items would be given to him for his own exclusive use as he exited the prison. The seizure of these items, their duplication, and ultimate surrender to the FBI, did not take place when the items were stored in the defendant's individual prison cell. The expectation of privacy in this case is distinct from that discussed in <u>Hudson</u>. Parr had a legitimate expectation of privacy in his personal belongings.

One of the items which was seized by correctional authorities, at the request of the FBI, was a notebook containing homework notes which the defendant was required to create in conjunction with an anger management program provided within the institution. (See government's 404b proffer Bates Stamped pages 053-072, Exhbit 3). The defendant signed what is believed to be a confidentiality

agreement when he entered the program. This document prevents disclosure, with rare exception, of the defendant's statements which were made in conjunction with this course. It is anticipated that the confidentiality agreement will be produced at the time of the hearing. It is maintained that the disclosure of these seized items are prohibited by the confidentiality agreement. As such, the defendant had an even greater expectation of privacy in this material. Furthermore, seizure of these documents would have been in clear violation of administrative institution procedures.

**II. ILLEGAL ARREST.**

The defendant was unquestionably in custody at the time of the FBI interrogation. The circumstances of his release on September 21, 2004, and reincarceration on September 22, 2004, have been previously described. They will be more fully developed at the time of the evidentiary hearing. It is undisputed that no warrant for the defendant's arrest or other lawful order for detention existed prior to September 29, 2004. The defendant was held in maximum security by Department of Correction officials at the direction of the FBI for eight days between September 22nd and September 29th, 2004. The defendant maintains that this detention was unreasonable and without lawful basis. The custodial statement given on September 24, 2004, was a direct result of such illegal detention. It must therefore be suppressed. Brown v. Illinois 422 U.S. 500, 604 (1975); Dunaway v. New York, 442 U.S. 200, 217

-9-

(1979); <u>United States v. Edwards</u>, 885 F2d 377, 384 (7th Cir. 1989); <u>United States v. Lopez-Arias</u>, 344 F3d 623, 2003 Fed. App. 0336P (6th Cir. 2003).

### III. SUPPRESSION OF PHYSICAL EVIDENCE AS A RESULT OF ILLEGAL ARREST.

The defendant maintains that the facts, as described herein, merit suppression of the physical evidence seized from the defendant's personal property at Oshkosh Correctional Institution. The seized items are tainted by the illegality of the protracted warrantless detention from September 22, 2004 to September 29, 2004. (See Argument II).

### IV. THE SCOPE OF THE 2001 WARRANT.

The government seeks to admit items seized during the course of a search warrant executed at the defendant's residence in 2001. These materials include the *Anarchists Cookbook* and a writing tablet with written chemistry formulas inside. The application for the search warrant was based upon anonymous information alleging that the defendant had, in the past, sold marijuana from the target address, as well as a garbage pull which contained marijuana and seeds. The application requested that a warrant be issued for the defendant's premises for seizure the following:

> "Marijuana and other controlled substances, scales, packaging materials, drug paraphernalia, drug ledgers, address/phone records, indicia of occupancy, opened or unopened financial documents relating to drug proceeds, U.S. Currency and any and all instrumentalities, substances of documents which are in violation of Possession of Controlled Substances With Intent to Deliver/THC, contrary to Section 961.41(1m)(h)1 of

-10-

> Wisconsin Statutes, and prayed that search warrant be issued to search said premises for said property."

The authorizing language of the warrant mirrored the items requested in the application. (See attached Warrant Application and Return, Exhibit 4). The investigative report which described the warrant execution, states that the officers conducted an initial protective sweep of the residence and observed chemicals, glass beakers, and chemistry type products in the basement, none of which were immediately recognizable as either illegal or harmful. (See attached investigative report, Exhibit 5). A more exhaustive search resulted in the seizure of various quantities of marijuana, identifying mail, and drug paraphernalia, including a postage scale, marijuana pipe, and rolling papers. The report states the following:

> "Several chemistry related books as well as the _____ cookbook and a notebook paper with various chemical formulas inside, was also taken. These items were taken because Officer Vaughn believed that Steven Parr had the majority of the ingredients to make mythamphetamines (sic), however, there was not an active lab or any finished product of mythamphetamines (sic) discovered. A plouze digital scale was also confiscated which was found by Sgt. Olson in the living room next to the couch. Officer Justman found a small paper bindle containing a white powdery substance in the closet of Steven Parr's bedroom, which is also taken and will be sent to the Crime Lab for identification. Parr said the product is only a caffeine type stimulant and is not a controlled substance. Officer Justman also confiscated $38.00 of US Currency from Eric Snyder. All of the suspected controlled substances were later transported to the Police Department by myself and Officer Justman where he later weighted and tested samples which returned positive field test for the presence of THC."

-11-

Two conclusions can be drawn from the investigative report, neither of which justify the seizure of the items in question. They are that the officer had foreknowledge that the defendant was engaged in the production methamphetamines, or the items in plain view were either apparently or, in fact, contraband. If the first explanation is correct, the application failed to advise the Magistrate of the officer's methamphetamine concerns. If the officer had foreknowledge of methamphetamine manufacturing, he should have stated such in the application and the court could then have determined whether such information justified the search for methamphetamine related materials. Alternatively, the report itself indicates that the officers did not conclude that any of the chemicals, beakers, or chemistry products were illegal. The chemistry books and notebook, on their face, had no apparent relationship to any illegal activity, including marijuana or methamphetamine transactions. The materials which were seized, copies of which will be provided at the time of the hearing, in no way relate to the manufacturing of any controlled substance. As such, the seizure of such items exceeded the scope of the search and is therefore, unconstitutional. <u>Horton v. California</u>, 496 U.S. 128 (1990). The defendant maintains that only those seized items which exceeded the scope of the warrant should be ordered suppressed. <u>U.S. v. Buckley</u>, 4 F3d 552, 558 (7th Cir. 1993).

The "plain view" doctrine does not salvage the illegality of that portion of the seizure which exceeded the scope of the warrant. U.S. v. Bruce, 109 F3d 323, 328 (7th Cir. 1997). In this case, the testimony will demonstrate that the incriminating nature of the items seized was not immediately present. No reasonable officer could have determined that probable cause existed to believe that the item was linked to criminal activity. Horton, *supra*. In the instant case, not only did the contents of the notebook and cookbook contain no evidence of illegality, but any theoretical probable cause for their seizure would have been garnered from opening the items and reading them. That would not necessarily have been permitted by the scope of the warrant. See U.S. v. Brown, 79 F3d 1499, 1509 (7th Cir. 1996).

Dated at Milwaukee, Wisconsin this 1st day of March, 2005.

> Respectfully submitted,
>
> /S/ Robert G. LeBell
> _____
> Robert G. LeBell, SBN 01015710
> Attorney for Defendant
> 735 W. Wisconsin Avenue, #800
> Milwaukee, WI 53233
> (414) 276-1233

-13-